UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOMMY ORTIZ, ) | |
| ) | |
| Plaintiff, ) | No. 1:20-CV-01033 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| SHERIFF JEFFERSON *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Tommy Ray Ortiz, a detainee in the Cook County Jail, brings this civil-rights lawsuit, 42 U.S.C. § 1983, alleging that Lieutenant Damita Delitz and Deputy Sheriff Frederick Jefferson failed to protect him from another detainee's attack on July 22, 2019.[1] R. 30, Am. Compl.[2] Delitz and Jefferson assert an affirmative defense, specifically that Ortiz did not properly exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). R. 38, Answer, at 4–5. Ortiz has moved for summary judgement to knock out the exhaustion defense, arguing that he did properly exhaust as required by the Cook County Department of Corrections' internal procedures. In turn, the Defendants cross-move for summary judgment, arguing that Ortiz failed to exhaust so the case must be dismissed. R. 83. For the reasons explained in this Opinion, even with the benefit of reasonable inferences, the

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C §1331.
[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Court must conclude that Ortiz failed to properly exhaust administrative remedies, so the Defendants' cross-motion for summary judgement is granted.

## I. Background

As a threshold matter, the Defendants argue that Ortiz's Local Rule 56.1 statement should be disregard because it does not strictly comply with the local rule. R. 83, Defs.' Resp. and Cross Summ. J. Mot. at 2. It is true that strict compliance with Local Rule 56.1 is typically required. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000). The local rule requires "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to supports the facts set forth in that paragraph." Local R. 56.1(a).

To the extent that Ortiz's Rule 56.1 statement is not strictly compliant with the rule, the Court finds that it is excusable. First, this is not the typical substantive-merits summary judgment motion with a discovery record necessitating copious discovery references. Instead, this motion is laser focused on exhaustion of administrative remedies under *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Second, much of Ortiz's 56.1 statements relies on records, including the grievance form or rule publications in the Cook County Inmate Handbook, R. 84-4 Defs.' Exh. D, Inmate Handbook. These are not the sort of deposition-generated or interrogatory-generated "facts" that strictly need the back-and-forth precision of Local Rule 56.1 to resolve disputes. Third, the relevant exhibits and information were all reasonably locatable

2

in the filing, and the underlying facts are presented simply enough so that they can be followed along without confusion. Yes, ideally Ortiz would have strictly complied with Local Rule 56.1 in every which way, but the unique circumstances here do not warrant striking his 56.1 statement.

Moving on to the facts, during the times relevant to this case, Ortiz was a detainee in the Cook County Jail. *See* DSOF ¶1[3]; R. 84-1, Defs.' Ex. A, Ortiz Dep. at 11:2–14. Deputy Sheriff Jefferson and Lieutenant Delitz were correctional officers working at the facility. DSOF ¶2; R. 88-1, Pl.'s Exh. A, Am. Compl. at 1. In June 2019, Ortiz became concerned with excess usage of the jail phone by certain detainees in the evening hours. *See* R. 84-2, Defs.' Exh B, June 3 Grievance at 1; Ortiz Dep. at 72:10–12; 124:18–125:12. According to Ortiz, some younger detainees were using the phone for long periods of time in the evenings, June 3 Grievance at 1–2, and even limiting other detainees' access to the phone by saying that they were not allowed to use it, Ortiz Dep. 125:6–12. Not surprisingly, this led to some threats and altercations over phone usage by other detainees. June 3 Grievance at 2.

Under the CCDOC inmate handbook, the grievance procedure requires inmates to first complete an Inmate Grievance Form within 15 days of an incident or of the problem being grieved. Inmate Handbook at 34. The handbook says that the

---

[3]Citations to the parties' Local Rule 56.1 Statements of Fact are as follows: "PSOF" for Ortiz's Statement of Facts [R. 79], "Defs.' Resp. PSOF" for Defendants' response to Ortiz's Statement of Facts [R. 85], "DSOF" for Defendants' Statement of Additional Facts [R. 84], "Pl. Resp. DSOF" for Ortiz's response to Defendants' Statement of Additional Facts [R. 89], "PSOAF" for Ortiz's Statement of Additional Facts [R. 88].

grievance should include "the specific date, location and time of the incident, problem or event that you are grieving." *Id.* Ortiz first filed a grievance on June 3, 2019, laying out the concern about phone access. In its entirety, the grievance stated: "These young guys are getting on the phones between 5:30 pm and 9:00 pm and staying on the phone for 1 and 2 hours at a time and not wanting to get off the phones. This needs to be stopped before a fight starts over the phones." June 3 Grievance at 1. Though the text of the grievance did not mention any specific threats or intimidation that he was facing from other detainees, Ortiz suggested that he was receiving regular threats about his phone usage from detainee Marc Lewis. PSOAF at 2–3; Ortiz Dep. at 124:22–125:21. Two days later, on June 5, 2019, the Jail responded in writing, saying that "community procedures are being followed. Detainees do not have a time limit on telephone usage but should be courteous to other detainees." June 3 Grievance at 2. Ortiz "explained"—as far as the record shows, explained verbally—to Jefferson and Delitz that a gang member named Marc Lewis was "serious about violently attacking me over using the jail phone system." PSOAF at 1; Am. Compl. at 4.

On June 10 (which was five days after the Jail responded), Ortiz submitted a grievance appeal. He wrote, "Most of these guys are young gang members who have no respect for anyone, let alone for someone waiting to use the phone. Their (sic) have been countless fights over the issues in this grievance. How many more fights are needed?" June 3 Grievance at 2. The same day, he received a response to the appeal, and this time the response simply said that the "original response stands." *Id.* Over

one month later, on July 22, 2019, Marc Lewis attacked Ortiz. Pl.'s Summ. J. Br. at 5; R. 84-3, Defs.' Exh C, July 28 Grievance.

After the attack, Ortiz filed another grievance. July 28 Grievance at 1. The grievance asserted that Ortiz was "violently assaulted on 7-22-19 by gang members," that "staff threatened me, telling me I had to sign a paper that stated that I did not want to press charges," and that "[t]his grievance is to clarify … I do not want to press charges on said gang members." *Id.* Ortiz received a response in which the Jail asserted that he was involved in the altercation as "a participant not a victim." *Id.* at 3. Ortiz appealed on August 5, contending that he "was initially attacked by [M]arc Lewis in the bathroom … and it continued into the sleeping area. The Lt. lied, saying I did not want to press charges." *Id.* The Jail's response explained that Ortiz's allegations could not be substantiated, and that the original response still stood. *Id.* Ortiz eventually filed this suit in February 2020.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility

5

determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

### III. Analysis

In the prison litigation context (like most other litigation contexts), the failure to exhaust administrative remedies "is an affirmative defense, so the defendants bear the burden of proof." *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022). Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "A suit filed before the prisoner has exhausted these remedies must be dismissed." *Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022) (cleaned up).[4] The purpose of the exhaustion requirement is to require prisoners to "make full use of whatever administrative process a prison chooses to create" in order to "monitor officer-prisoner relations," "resolve complaints quickly," and "reduce[] inefficient uses of the federal courts." *Id.* at 782. In other words, administrative exhaustion "alerts the prison to the nature of the wrong for which redress is sought," *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), in order to "give the prison an opportunity to

---

[4] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

address the problem *before* burdensome litigation is filed," *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (emphasis in original).

The regulations of the particular prison or jail system define what is required for proper exhaustion. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). Courts follow "a strict compliance approach to exhaustion under the PLRA." *Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022) (cleaned up); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016). So a prisoner must file grievances "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002). In order to *properly* exhaust, an inmate must "complete the administrative review process in accordance with the applicable procedural rules," *Woodford*, 548 U.S. at 88, including filing a grievance or appeal "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

As discussed earlier, the CCDOC grievance procedure requires inmates to first complete an Inmate Grievance Form within 15 days of an incident or problem being grieved. Inmate Handbook at 34. A grievance appeal must also be filed "in all circumstances in order to exhaust administrative remedies" and must be done so within 15 days of receiving a response. *Id.* at 35. The grievance must include "the specific date, location and time of the incident, problem or event that you are grieving." *Id.* at 34.

Ortiz's written grievances failed to specifically alert the CCDOC to the nature of the wrong—the attack by another inmate—for which he now seeks redress. Ortiz's complaint is premised on the physical assault that he suffered at the hands of inmate Marc Lewis, and the failure of Delitz to move Ortiz to a new location ahead of this alteration. But the written grievances offer only a general complaint of the overuse of phones by certain inmates and do not specify at any point that Ortiz specifically feared that he *himself* would be attacked by any inmates due to *his* own use of the phone. Rather, Ortiz's June grievance only says "[t]hese young guys are getting on the phones between 5:30pm and 9:00pm and staying on the phone for 1 and 2 hours at a time and not wanting to get off the phones. This needs to be stopped before a fight starts over the phones." June 3 Grievance at 1. Ortiz does not specify that any particular threats were made against *him* in relation to his use of the phones. Instead, at most Ortiz's grievance reads as a general complaint that a fight might break out among detainees from phone usage—not that Ortiz *himself* was a potential target of assaults. And when Ortiz appealed on June 10, he wrote only that "the[re] have been countless fights over the issues in this grievance. How many more fights are needed?" *Id.* Here again Ortiz did not say that he was *personally* being threatened with assault, only that other fights—not necessarily involving him—had occurred and could happen again. Given the absence of references to his own personal safety, the Jail was not put on notice about any particular imminent threat of harm to *Ortiz* in particular.

The contrast between those facts and the allegations laid out in Ortiz's complaint is stark. Ortiz's complaint outlines that he was experiencing threats from a

8

particular inmate, that he verbally told Jefferson and Delitz about the danger, and that he was rebuffed. No details relating to any of that are found in the written grievances. This "disconnect between the grievance" and the complaint means that Ortiz failed to exhaust. *See Bowers v. Dart,* 1 F.4th 513, 517–18 (7th Cir. 2021) (explaining that the inmate failed to exhaust given the "disconnect between the grievance" targeting the failure respond to pleas for help *before* an assault by another inmate and the "complaint" targeting guards who ignored the plaintiff *during* the attack).

Ortiz did file another grievance on July 28, 2019, after he suffered a physical assault by gang members. But this grievance only notified the Jail that Ortiz wanted to bring formal charges against the *gang members* involved in the assault. The grievance did not complain about what Delitz or Jefferson did (or what they failed to do). Ortiz wrote that he was "violently assaulted on 7-22-29 by gang members, staff threated me, telling me I had to sign a paper that stated that I did not want to press charges, I refused to sign it. Staff then stated he'd find someone else to sign it. This *grievance is to clarify my position.* I do not want to press charges on said gang members." July 28 Grievance at 1 (emphasis added). None of that targets the alleged failure of Delitz or Jefferson to protect Ortiz from Lewis (or any other detainee). *Cf. Coleman v. Garcia*, 2022 WL 226010, at *4 (N.D. Ill. Jan. 26, 2022) (holding that the inmate failed to exhaust because the grievance did not identify the defendant-officer, nor complain about any wrongful conduct by the officer leading up to the failure to protect). Ortiz relies on *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013), to argue that written grievances should be read together. If a prison's or jail's procedures allow

9

for that type of multiple-grievance context, then that would be an appropriate principle to following evaluating exhaustion. But Ortiz's grievances—even when read together—still failed to put CCDOC on notice of the allegations at issue here. By his own words, the intent of Ortiz's second grievance (the one in July) was to clarify his stance on refusing to press formal charges against the gang members. Simply put, without identifying Jefferson and Delitz[5] and their specific conduct relating to a failure to protect Ortiz, the grievances "did not provide the prison with any opportunity to address plaintiff's concern." *Sylvester v. Chandler*, 2010 WL 3420385, at *5 (N.D. Ill. Aug. 27, 2010).

Ortiz's reliance on *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008), is misplaced because his grievances fail to contain the same level of specificity as those in *Howard*. In that case, an inmate (Howard) had been previously sexually assaulted by members of a prison gang. *Id.* at 1229. The inmate reported to prison officers that he feared being harmed again by the gang. *Id.* at 1231–33. Howard then suffered two more sexual assaults at the hands of the same prison gang and brought suit against the correctional officers who did not intervene. *Id.* The Tenth Circuit held that Howard properly exhausted administrative remedies because the grievances warning of

---

[5]To be clear, the fact that Ortiz did not specifically *name* Jefferson and Delitz in his grievances would not be dispositive. Specific names might very well be unnecessary when the relevant officer can be identified by other ways and circumstances. The problem with Ortiz's grievances were that he did not request protection, did not lay out the nature of his claim, and did not mention the conduct of *any* officer in failing to protect him.

future assault were sufficiently specific in explaining the harm that feared, why he held that fear, and what needed to change. *Id.* at 1244.

In contrast to Ortiz's grievances, Howard's grievances specifically "warned prison officials that the 2-11 Crew presented a risk to Howard's personal safety so long as he remained in [his current housing location]." *Howard*, 534 F.3d at 1244. When this request was not honored, Howard found himself in "in the same situation between the time he filed the first grievance and the point at which he was transferred" later for unrelated reasons. *Id.* In contrast, the general situation of phone overuse that Ortiz complained of in the June 3 grievance was not the same as the specific threats and inaction by Jefferson and Delitz that he describes in the current complaint. This case does not match up with *Howard*. The CCDOC did not yet have regarding specific threats to Ortiz's safety. Ortiz did not exhaust administrative remedies.

## IV. Conclusion

Because Ortiz failed to exhaust administrative remedies, the Defendants' motion for summary judgement is granted and the case is dismissed without prejudice for failure to exhaust. Ortiz's motion for summary judgment is denied.

ENTERED:

                                                 s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2023